UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BETH SALTZMAN,

        Plaintiff,

    v.                                                                                                         00-CV-1186

PAUL E. KROSS; MID-VALLEY OB-GYN
ASSOCIATES, P.C.; MID-VALLEY OB-GYN
ASSOCIATES, P.C.PENSION PLAN and MID-
VALLEY OB-GYN ASSOCIATES, P.C. PROFIT
SHARING PLAN,

        Defendants,

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LEVY, RATNER & BEHROOZI, P.C.<br>Attorneys for Plaintiff<br>80 Eighth Avenue, 8th Floor<br>New York, NY 10011 | OWEN MARC RUMELT, ESQ. |
| LOMBARDI, REINHARD, WALSH<br>& HARRISON, P.C.<br>Attorneys for Defendants<br>111 Winners Circle<br>Albany, NY 12205 | PAUL E. DAVENPORT, ESQ. |

HOWARD G. MUNSON, SR. J.

**MEMORANDUM DECISION AND ORDER**

**BACKGROUND**

      Plaintiff, Beth Saltzman, was employed by defendant, Mid-Valley OB-GYN Associates ("Mid-Valley"), as a certified nurse midwife from September 1986 through July 13, 1999, when Mid-Valley terminated Ms. Saltzman's employment. *See* Dkt. No. 24, Pl.'s Mem. of Law at 3-6. At the time Ms. Saltzman began her employment, Mid-Valley maintained two plans, the Paul

E. Kross, M.D., P.C. Employees' Defined Contribution Pension Plan ("Pension Plan") and the Paul E. Kross, M.D., P.C. Profit Sharing Plan ("Profit Sharing Plan") (collectively, "The Plans"), which were administered by Dr. Paul E. Kross, M.D., one of the principals in Mid-Valley's medical practice. *See* id. at 3; Dkt. No. 20, Defs.' Mem. of Law at 2. Under the Plans' terms, Mid-Valley employees, who had completed a year of service and had attained the age of twenty-one, were eligible to participate. The Plans' terms set forth that Mid-Valley employees who met these criteria "shall become a Participant . . . unless participation is specifically waived by the Employee." *See* Dkt. No. 23, Rumelt Aff. at Ex. 6.

As of December 1, 1987, Saltzman met the Plans' eligibility requirements; however, she did not participate in the plans at that time. According to defendants, when Saltzman became eligible to participate in the Plans, Dr. Kross and she discussed her participation. Saltzman, however, declined to participate because she wished to maximize her then current compensation. As a result, Dr. Kross did not include her in the Plans, but instead paid for and provided her with disability benefits and continuing medical education, in addition to creating a Lamaze Class program for her financial benefit. *See* Dkt. No. 20, Defs.' Mem. of Law at 2. Inasmuch as Saltzman states that she "did not commence her participation in the Plans at that time," she does not dispute defendants' account. *See* Dkt. No. 24, Pl.'s Mem. of Law at 3. On July 1, 1988, Saltzman executed a written waiver stating: "To whom it may concern: I hereby decline to participate in the Mid-Valley OB GYN Associates, P.C. Pension and Profit Sharing Plan [*sic*] for the 1988 plan year." *See* Dkt. No. 23, Rumelt Aff. at Ex. 2A. Defendants assert that in subsequent years, Dr. Kross and Saltzman had an annual discussion in regard to her compensation and participation in the Plans, and that each year she declined to participate and

2

orally waived her rights. *See* Dkt. No. 20, Defs.' Mem. of Law in Supp. of Summ. J. at 2. Saltzman, emphasizes she never signed written waivers of participation for any Plan years subsequent to 1988. *See* Dkt. No. 24, Pl.'s Mem. of Law at 4.

Effective January 1, 1989, Mid-Valley entered into "Basic Money Purchase Plan Adoption Agreements" with Merrill Lynch, which renamed the Pension Plan as the "Mid-Valley OB-GYN Associates, P.C. Money Purchase Pension Plan" and amended its terms. Mid-Valley entered into a similar agreement with Merrill Lynch with respect to the Profit Sharing Plan, which renamed it as the "Mid-Valley OB-GYN Associates, P.C. Profit Sharing Plan." Dr. Kross served as Trustee for both Plans. *See* Dkt. No. 24, Pl.'s Mem. of Law at 4. The "new" Plans' eligibility requirements provided that "each Employee . . . who has attained age 21 . . . and completed 2 Years of Service [as defined therein] . . . is eligible to become a participant." *See* Dkt. No. 23, Rumelt Aff. at Ex.2B. Unlike the original Plans, the new Plans did not contain a waiver provision.

In or around 1992, Saltzman began to question why she was the only Mid-Valley employee not to participate in the Plans. Saltzman requested a copy of the Summary Plan Description of the then current plan, which Mid-Valley's office manager provided. *See* Dkt. No. 24, Pl.'s Mem. of Law at 5. At this time, Saltzman consulted with Dr. Magaret O'Hare, a principle of Mid-Valley's practice, concerning her participation in the Plans. Dr. O'Hare in turn consulted with her father, who practiced law, and as a result of this consultation, Dr. O'Hare informed Saltzman that she had that right to participate in the Plans. *See* Dkt. No. 20, Defs.' Mem. of Law at 3. Saltzman then made a request to participate in the Plans, and Dr. Kross added her as a participant effective January 1, 1993: the parties entered into a letter of

understanding, which provided, *inter alia*, that Saltzman would be "[e]ligible for participation in the Practice Profit Sharing Plan effective January 1, 1993.

Thereafter, Mid-Valley made contributions into the Plans on Saltzman's behalf for the remaining duration of her employment. *See* Dkt. No. 24, Pl.'s Mem. of Law at 6. Saltzman received biannual benefit statements, which notably indicated her lack of any contributions from 1987 to January 1, 1993.

After the sale of the Mid-Valley practice, Saltzman was terminated on July 13, 1999. At such time, Saltzman had retained counsel, not of record in this litigation, who asserted a claim on her behalf for benefits under the Plans for all years she was employed by Defendants. Defendants responded by letter dated October 22, 1999, which characterized Saltzman's claim as "wholly without merit." Id. Defendants indicated that they did not wish to discuss the matter any further. Id.

Saltzman contends that she is entitled to benefits under the Plans for the period of December 1, 1987 through December 31, 1992, and that her claims did not accrue until her receipt of defendants' letter October 22, 1999. Defendants contend that plaintiff's claims accrued no later than January 1, 1993 and as such, her claims exceed ERISA's six-year statute of limitation.

Currently before the court are defendants' motion for summary judgment, and plaintiff's cross-motion for summary judgment, both made pursuant to Rule 56 of the Federal Rules of Civil Procedure. The parties have each filed opposition thereto. Plaintiff premises federal jurisdiction upon Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. Plaintiff alleges that defendants breached their fiduciary duties

under the terms of pension and profit sharing plans and seeks payment of benefits alleged due and owing, together with attorneys fees and the costs of the action. *See* Dkt. No. 1, Compl. at ¶¶ 1 and 2. Defendants contend that plaintiff's claims are time-barred by ERISA's six-year statute of limitations. Plaintiff disputes defendants' contention.

## DISCUSSION

The standard for summary judgment is well-settled. Rule 56 allows for summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Summary judgment is properly regarded as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1991) (quoting Federal Rule of Civil Procedure 1). A court may grant a motion for summary judgment when the moving party carries its burden of showing that no triable issues of fact exist. *See* Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir.1990). In light of this burden, any inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party. *See* id.; United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962) (per curiam). If the moving party meets its burden, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). To defeat a motion for summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510. When reasonable minds could not differ as to the import of the evidence, then summary judgment is proper. *See* Anderson, 477 U.S. at 250-251, 106 S. Ct. at 2511.

The same standard applies where, as here, the parties filed cross-motions for summary judgment. Terwilliger v. Terwilliger, 206 F.3d 240, 244 (2d Cir.2000). When both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party. Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir.1993). Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration. Schwabenbauer v. Board of Education, 667 F.2d 305, 314 (2d Cir.1981).

As the Supreme Court has noted, the length of a limitation period for instituting suit in federal court "inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones." Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 463-64, 95 S. Ct. 1716, 44 L .Ed.2d 295 (1975). Statutes of limitation serve several important policies, including rapid resolution of disputes, repose for those against whom a claim could be brought, and avoidance of litigation involving lost evidence or distorted testimony of witnesses. Wilson v. Garcia, 471 U.S. 261, 271, 105 S. Ct. 1938, 85 L. Ed.2d 254 (1985). For these reasons, statutes of limitation "are not to be disregarded by courts out of a vague sympathy for particular litigants." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152, 104 S. Ct. 1723, 80 L. Ed.2d 196 (1984) (*per curiam*). Indeed, strict adherence to limitation periods "the best guarantee of evenhanded

administration of the law." Mohasco Corp. v. Silver, 447 U.S. 807, 826, 100 S. Ct. 2486, 65 L. Ed.2d.2d 532 (1980).*(per curiam)*. Indeed, strict adherence to limitation periods "is the best guarantee of evenhanded administration of the law." Mohasco Corp. v. Silver, 447 U.S. 807, 826, 100 S. Ct. 2486, 65 L. Ed.2d 532 (1980).

Saltzman's claims under 29 U.S.C. §§ 1104 and 1109 for breach of fiduciary duty are governed by ERISA's statute of limitations, which provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of–(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.  Saltzman also asserts claims under 29 U.S.C. § 1132 for which ERISA does not set forth a specific statute of limitations.  As such, the controlling limitations period is that specified in the most nearly analogous state limitations statute.  Miles v. New York State Teamsters Conference Pension and Ret. Fund Employee Pension Benefit Plan, 698 F.2d 593, 598 (2d Cir. 1983).  The Second Circuit has determined that the six-year statute of limitations period prescribed by N.Y.C.P.L.R § 213 controls. Id.  Here, the parties agree; however, they depart as to when Saltzman's claims accrued.

Generally, in ERISA actions, a plaintiff's cause of action accrues after a claim for benefits has been made and has been formally denied.  *See* Miles, 698 F.2d at 598; Larsen v. NMU Pension Trust of NMU Pension & Welfare Plan, 902 F.2d 1069, 1073-74 (2d Cir. 1990). In recognition of those instances where there has been no formal demand for benefits and thus

no formal denial of benefits, the Second Circuit has held that in such instances "a plaintiff's cause of action accrues upon a clear repudiation that is known, or should be known, to the plaintiff–regardless of whether the plaintiff formally applied for benefits." Carey v. International Brotherhood of Electrical Workers 363 Pension Plan, 201 F.3d 44, 47-48 (2d Cir. 1999).

Saltzman became eligible to participate in the Plans on December 1, 1987, but did not formally apply for entry to them at that time. The following year, she signed a waiver declining to participate in the Plans for their 1998 year. In her deposition testimony, she provides the details of her waiver signing. She states that, then officer manager Mary Tyler, "handed me a waiver to sign. She handed me a waiver, and actually said that if I wanted to put my own money into the plan I could do that but that Dr. Kross felt that he paid me a good salary and that he was not going to put in monies for me." (Saltzman Dep. pp. 22-23) After receiving the waiver, Saltzman thought about it for about an hour before signing. (Saltzman Dep. p. 29)

Whether or not Saltzman made a formal application for benefits, Dr. Kross, clearly and unequivocally, repudiated her entitlement to benefits in the statement he made to Mary Tyler and which she communicated to Saltzman, which reported that Dr. Kross thought he paid Saltzman a good salary and would not put any monies in the Plan for her. This repudiation became known to Saltzman no later than early July 1998, when, by her own admission, she was made aware of Dr. Kross' statement. She also knew of the Plans' existence at that time because, "I was upset that I wasn't going to be in the pension plan." (Saltzman Dep. p. 29).

The fact that Saltzman claims that she did not apply for inclusion in the Plans' benefits because she thought if she did, she might lose her job, (Saltzmanis Dep. p. 29), is irrelevant to

8

the fact that she knew of the Plans' existence, and that there was a known repudiation thereof. <u>Ambris v. Bank of New York</u>, 1998 WL 702289, at *5 (S.D.N.Y. Oct.7, 1998) ("The fact that [the plaintiff] misunderstood the technical term of art that describes the reason for her denial of benefits does not change [the clarity of the plan's repudiation]."). A plaintiff's ERISA cause of action accrues, and the six year limitation period begins to run "when a claimant knows or should know through an exercise of reasonable diligence, of the acts constituting the alleged violation. <u>Alcorn v. Burlington National Rail Road,</u> 878 F.2d 1105, 1108 (8th Cir. 1989).

Consequently, "[o]nce a plaintiff is on clear notice that [he or] she is not entitled to benefits, the cause of action accrues." <u>Ambris</u> 1998 WL 702289, at *6. In this case, Saltzman's ERISA claim accrued in July 1988, therefore, she had until July 1994, at the latest to file suit on this cause of action. Because her claim in this action was not filed until August 8, 2000, it is time barred by the applicable statute of limitations.

Accordingly, defendants' motion for summary judgment is **GRANTED,** plaintiff's cross motion for summary judgment is **DENIED**, and the complaint is **DISMISSED**.

**IT IS SO ORDERED**

Dated: February 28, 2006
Syracuse, New York

_____
Howard G. Munson
Senior U.S. District Judge

9